# UNITED STATES DISTRICT COURT
for the
Southern District of Ohio

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Paul Hudson | ) | Case No. 3:21MJ359 |
| | ) | |
| *Defendant(s)* | ) | |

## CRIMINAL COMPLAINT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of __9/8/2021__ in the county of __Montgomery__ in the __Southern__ District of __Ohio__, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 21 USC s. 841(a)(1)&(b)(1)(B) | possession with intent to distribute a mixture or substance containing 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance |
| 18 USC s. 922(g)(1) & 924(a)(2) | felon in possession of a firearm |

This criminal complaint is based on these facts:

See Attached Affidavit of Fred Zollers

☑ Continued on the attached sheet.

*Fred Zollers*
Complainant's signature

Fred Zollers, TFO of the FBI
*Printed name and title*

Sworn to before me and signed in my presence.   Via FaceTime

Date: 9/29/21

City and state: Dayton, Ohio

*signature*

US Magistrate Judge
*name and title*

## AFFIDAVIT

I, Frederick D. Zollers, being duly sworn, does hereby depose and state as follows:

## INTRODUCTION

1. I am a sworn law enforcement officer in the State of Ohio for fifteen (15) years. I am presently a sworn member of the Montgomery County Sheriff's Office. I am currently assigned to the Federal Bureau of Investigation's (FBI) Southern Ohio Safe Streets Task Force (SOSSTF) as a Task Force Officer (TFO), I have received training in drug trafficking investigations and have participated in numerous narcotics-related investigations (ultimately leading to successful prosecution) that involved surveillance, gathering evidence of money laundering, interviewing suspected drug traffickers, and supervising the activities of informants who provided information and assistance which resulted in the seizure of narcotics, firearms, and U.S. currency. I have conducted numerous investigations into the unlawful distribution and possession of controlled substances; use and possession of firearms. Based on my training and experience, I am familiar with federal drug laws, and am aware that it is a violation of Title 21, United States Code, Sections 841(a)(1) and 846 to knowingly and intentionally distribute and possess with intent to distribute controlled substances (including heroin, fentanyl, cocaine, and methamphetamine), as well as to conspire to do the same. Further, I am aware of federal firearm laws and know that possessing firearms in furtherance of a drug trafficking crime is a violation of Title 18, United States Code, Sections 924(c)(1)(A) and 2. In addition, I am aware the possession of a firearm by a convicted felon is a violation of Title 18, United States Code, Section 922(g)(1).

## PURPOSE OF AFFIDAVIT

2. This Affidavit is submitted in support of a criminal complaint for, and seeks the issuance of an arrest warrant against, Paul A. Hudson (hereinafter "**HUDSON**") for violations of 21 U.S.C. s.

1

841(a)(1) & (b)(1)(B) (possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance) and 18 U.S.C. s. 922(g)(1) & 924(a)(2).

3. Along with other law enforcement agents, I have participated in the investigation of **HUDSON** in connection with the conduct detailed in this Affidavit. As part of the investigation, I have, among other things, discussed information with, and/or reviewed documentation and reports provided by, other law enforcement officers. My knowledge of the facts and circumstances set forth in this Affidavit is thus based upon my own personal observations, as well as information I have received from other law enforcement officers involved in the investigation. For purposes of this Affidavit, I have not distinguished between information of which I have direct knowledge and that of which I have indirect knowledge.

4. I have elected not to include in this Affidavit all the factual details gathered to date during the investigation, but rather I have included only certain information sufficient to establish probable cause to believe that **HUDSON** has committed violations of 21 U.S.C. s. 841(a)(1) & (b)(1)(B) (possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance) and 18 U.S.C. s. 922(g)(1) & 924(a)(2) (felon in possession of a firearm).

**SUMMARY OF PROBABLE CAUSE**

5. On Wednesday, September 8, 2021, members of the Regional Agencies Narcotics and Gun Enforcement (RANGE) Task Force, members of the FBI Southern Ohio Safe Streets (SOSSTF) Task Force and members of Customs and Border Patrol (CBP) aviation conducted surveillance on **HUDSON** at 5141 Well Fleet Drive in the City of Trotwood, Montgomery County, Ohio. RANGE

Task Force members had been conducting a long term drug trafficking investigation involving **HUDSON** and the distribution of fentanyl in Montgomery County, Ohio. The residence of 5141 Well Fleet Drive was identified as a location where **HUDSON** stores and distributes drugs, as well as stores drug proceeds.

6. While conducting surveillance, Detective Sean Humphrey observed **HUDSON** arrive at 5141 Well Fleet Drive driving a black Lincoln sedan with dark tinted windows. **HUDSON** exited the Lincoln and walked toward the door of 5141 Well Fleet Drive. **HUDSON** was the sole occupant of the vehicle and detectives had prior knowledge that **HUDSON** had an invalid driver's license. CBP aviation established surveillance on the Lincoln. After several minutes, **HUDSON** walked away from the door of 5141 Well Fleet Drive, entered the Lincoln and departed in the vehicle. CPB aviation surveilled **HUDSON** as he drove to a residential plat off of Shiloh Springs Road in the City of Trotwood and engaged in a suspected car-to-car drug transaction with occupant(s) of a black sedan. CBP aviation observed **HUDSON** make a hand-to-hand exchange through the driver's door window with the occupant(s) of the black sedan. Following the suspected car-to-car drug transaction, **HUDSON** drove back to 5141 Well Fleet Drive, exited the Lincoln and walked toward the door of 5141 Well Fleet Drive. After several minutes, **HUDSON** walked away from the door of 5141 Well Fleet Drive, entered the Lincoln and departed in the vehicle. CBP aviation surveilled **HUDSON** as he drove to the Speedway Gas Station located at 2001 Shiloh Springs Road. **HUDSON** engaged in two suspected drug transactions while at the gas station and then drove back to 5141 Well Fleet Drive. **HUDSON** exited the Lincoln and walked toward the door of 5141 Well Fleet Drive.

7. Task force members coordinated to initiate contact with **HUDSON** when he exited the residence and walked toward the Lincoln. CPB aviation maintained surveillance on the door of the residence

3

and advised once **HUDSON** exited the residence. Task Force Officer (TFO) Matthew Overholt and I, wearing ballistic vests with police placards, initiated contact with **HUDSON** as he walked toward the Lincoln. When **HUDSON** observed TFO Overholt and me, he tossed a small plastic baggie containing a white powdery substance from his left hand. **HUDSON** was detained without incident and ultimately booked into the Montgomery County Jail. After **HUDSON** was detained, task force members cleared and secured the residence pending application of a state search warrant.

8. Pursuant to a state search warrant authorized by the Honorable Montgomery County Common Pleas Court Judge Katherine Huffman, task force members conducted a search of 5141 Well Fleet Drive. Task force members located and seized the following but not limited to items; a loaded Glock model 19C semi-automatic handgun (serial number EAN004) found in a plastic tub in the living room area, a large amount of U.S. currency and distribution quantities of methamphetamine, cocaine and fentanyl in the kitchen area. Specifically, task force members located $15,000 U.S. currency and multiple boxes of sandwich baggies containing plastic baggies of drugs and drug paraphernalia in the kitchen hidden above the ceiling tiles. One of the box of sandwich baggies contained a plastic baggie of suspected methamphetamine, a plastic baggie of suspected fentanyl and a plastic baggie of suspected cocaine. Additional amounts of U.S. currency, suspected narcotics, drug paraphernalia (i.e. digital scales, press, baggies of distribution) and a loaded Taurus handgun were located and seized from inside the residence. In total approximately $19,290.00 U.S. currency was seized from inside the residence.

9. Detective Humphrey and Detective Brad Campbell conducted a post Miranda interview with **HUDSON** on Thursday, September 9, 2021. Prior to conducting the interview, Detective Campbell listened to recorded phone calls **HUDSON** made while incarcerated at the Montgomery County Jail. During the recorded phone calls, **HUDSON** discussed about the suspected drugs,

firearms and U.S. currency being located and seized from inside of 5141 Well Fleet Drive. During the post Miranda interview, **HUDSON** claimed the Glock model 19C handgun was not his; however, he said he had handled the Glock handgun before. **HUDSON** admitted that all of the methamphetamine, fentanyl and cocaine inside the box of sandwich baggies located in the kitchen ceiling was his. **HUDSON** admitted to using cocaine and marijuana.

10. The suspected drugs were submitted to the Miami Valley Regional Crime Laboratory (MVRCL) for analysis. On September 20, 2021, I received lab results from the MVRCL. The small plastic baggie containing a white powdery substance that **HUDSON** tossed while being detained was confirmed to be Fentanyl (schedule II), having a net weight of 0.10 grams and Cocaine (schedule II) having a net weight of 0.28 grams. The plastic baggie of suspected methamphetamine located in the box of sandwich baggies in the ceiling was confirmed to be Methamphetamine (schedule II), having a net weight of 62.45 grams. The plastic baggie of suspected fentanyl located in the box of sandwich baggies in the ceiling was confirmed to be Fentanyl (schedule II), having a net weight of 5.49 grams. The plastic baggie of suspected cocaine located in the box of sandwich baggies in the ceiling was confirmed to be Cocaine (schedule II), having a net weight of 15.53 grams. Based on my training and experience, I know the above quantities of narcotics were intended for distribution.

11. I subsequently spoke with Special Agent (SA) Chris Reed of the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who has training and experience in determining the place of manufacture for firearms and ammunition. SA Reed advised the Glock model 19C handgun was manufactured outside the state of Ohio, thus moved in interstate commerce.

12. Based on a review of **HUDSON'S** criminal history, I know that **HUDSON** is currently on federal supervised release through the Southern District Court of Ohio for Possession with intent to distribute Heroin (case number 3:12-CR-72-006).

13. Based on the facts set forth in the Affidavit, there is probable cause to believe that, on or about September 8, 2021, in the Southern District of Ohio, **HUDSON** committed violations of 21 U.S.C. s. 841(a)(1) & (b)(1)(B) (possession with intent to distribute 50 grams or more of a mixture or substance containing a detectable amount of methamphetamine, a Schedule II controlled substance) and 18 U.S.C. s. 922(g)(1) & 924(a)(2) (felon in possession of a firearm).

Further your Affiant sayeth naught.

*Fred Zollers*
Frederick D. Zollers, Task Force Officer
Federal Bureau of Investigation
Southern Ohio Safe Streets Task Force

Subscribed and sworn to before me this ___29th___ day of September, 2021.

Sharon L. Ovington
United States Magistrate Judge

6